538 So.2d 1168 (1989)
Thurmon DARBY
v.
STATE of Mississippi.
No. 57989.
Supreme Court of Mississippi.
January 4, 1989.
Rehearing Denied February 1, 1989.
*1170 William Sebastian Moore, Cynthia Stewart, Jackson, for appellant.
Mike Moore, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ZUCCARO, Justice, for the Court:
On February 5, 1986, Thurmon Darby was found guilty of aggravated assault of Eugene Richardson. On November 7, 1986 Darby was sentenced to twenty years in the custody of the Mississippi Department of Corrections. Darby appeals assigning the following as error on appeal:
I. THE COURT ERRED IN REFUSING TO ALLOW THURMON DARBY TO PRESENT HIS DEFENSE OF SELF-DEFENSE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
II. IT WAS HARMFUL ERROR FOR THE TRIAL COURT TO ADMIT INTO EVIDENCE PHOTOGRAPHS OF THE CAR OF EUGENE RICHARDSON SHOWING WHERE A SHOT HAD BEEN FIRED AT THE CAR OVER THE OBJECTION OF TRIAL COUNSEL WHERE PREDICATE WAS NOT PROPERLY LAID.
III. IT WAS HARMFUL ERROR FOR THE STATE TO FAIL TO PROVIDE DARBY WITH AN AFFIDAVIT SIGNED BY DARBY CHARGING EUGENE RICHARDSON WITH ASSAULT.
IV. THE COURT ERRED IN REFUSING TO ALLOW JOE NATHAN McFARLAND TO TESTIFY FOR THURMON DARBY IN VIOLATION OF DARBY'S SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 14 AND 26 OF THE CONSTITUTION OF THE STATE OF MISSISSIPPI.
V. THE EXCLUSION OF THE TESTIMONY OF JOE NATHAN McFARLAND BECAUSE HIS NAME DID NOT APPEAR ON THE WITNESS LIST PROVIDED BY DEFENSE COUNSEL TO THE STATE PURSUANT TO RULE 4.06 OF THE MISSISSIPPI UNIFORM CRIMINAL RULES OF CIRCUIT COURT PRACTICE CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT.
Since assignments IV and V are so similar the discussion of the two will be consolidated for purposes of this opinion.

STATEMENT OF THE FACTS
Thurmon Darby, appellant herein, was indicted by a grand jury of aggravated assault. At trial, Darby raised the defense of self-defense. Darby called several witnesses who testified that Eugene Richardson had threatened or otherwise intimidated Darby and members of his family on several occasions.
Roy Tatum was called as a witness for the defense. Tatum testified that he and friends had been "hanging out in the flats" at Poindexter and Canal one night with Darby. Darby allegedly walked off by himself. About thirty minutes after Darby left, the group at "the flats" heard a gunshot. Tatum saw Darby running towards the "flats." Tatum testified that Darby was scared.
Darby testified that the reason he was running the day Tatum saw him was because *1171 Eugene Richardson had shot a pistol between his legs while Darby was visiting with a lady named Yvonne Tynes. Yvonne Tynes was Eugene Richardson's co-worker. Darby was involved in a romantic relationship with Yvonne as was Richardson.
Through his relationship with Yvonne Tynes, Darby ascertained that Yvonne and Richardson were involved in a food stamp scam whereby they would trade food stamps for gasoline and marijuana. Somehow Yvonne Tynes became aware of Darby's status as a police informer. According to Darby, Tynes told Richardson that Darby was an informer and knew of their practice of trading food stamps. Darby argues that Richardson was after Darby because he was afraid Darby would inform the authorities about the food stamp scam.
There was testimony to the effect that Richardson was looking for Darby two weeks before Darby shot him. Roy Tatum testified that he had spoken with Richardson who seemed agitated at the time. Richardson told Tatum he had something to give Darby but refused to give it to Tatum for him to give it to Darby. Tatum testified that he had seen Richardson on the day of the shooting, October 20, 1984, with what appeared to be a gun covered with a towel on the car seat. Tatum told Darby that Richardson was looking for him and that he seemed mad so Darby had better avoid Richardson because Tatum thought Richardson had a gun.
The record reveals that Richardson drove by the Dairy Bar on October 20, 1984 while Darby was hanging around there with his friends. Richardson was on his way back to work after having been to McDonald's to get lunch. According to Tatum, Richardson slowed down and "beckoned" for Darby to come over to his car. The friends of Darby tried to persuade Darby not to walk over to Richardson's car; but, Darby proceeded in that direction. Richardson stopped the car. Tatum heard someone in the crowd say, "He got a gun!", referring to Richardson. Then Darby began firing his own gun. Darby fired his .357 magnum pistol four times. The first round lodged in the door of the car that Richardson was driving. The second round hit Richardson in his chin. Richardson attempted to get out of his car after the second shot hit him. Darby fired another round which hit Richardson in the left knee and caused him to fall face first onto the pavement. Darby then fired the last round which hit Richardson in the back of the right thigh. Darby fled. A police officer arrived on the scene and Richardson was taken to Hinds General Hospital where he had two surgeries and was released after four weeks. After the shots ceased Darby ran away leaving Richardson lying on the pavement. Tatum then observed a man running up to Richardson's car. The man reached in Richardson's car and grabbed something which Tatum could not see and ran away. Tatum testified that the towel he had seen covering something on Richardson's car seat was found laying on the pavement about ten feet from the car.
Clint Myles also testified for the defense. Myles testified that someone had run over to Richardson's car and removed something from the car after the shooting. Darby testified that he definitely saw a gun in Richardson's possession on the day of the shooting.
Andrewline Darby, Thurmon Darby's wife, testified that Richardson called her at home and threatened her and Darby's mother. Richardson told Andrewline he would burn Andrewline's home and her mother-in-law's home down.
Thurmon Darby's theory of self-defense is based upon the argument that the foregoing facts gave rise to a reasonable apprehension of fear, on his behalf, that Richardson was intent on harming Darby and members of Darby's family.
Darby was found guilty by a jury of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections. Darby appeals the verdict and sentence.

I. DID THE TRIAL COURT ERR IN REFUSING TO ALLOW DARBY TO PRESENT HIS DEFENSE OF SELF-DEFENSE IN VIOLATION OF THE SIXTH AND FOURTEENTH *1172 AMENDMENTS TO THE UNITED STATES CONSTITUTION?
Darby asserts that the following errors committed by the trial court prevented him from effectively establishing his defense of self-defense. The appellant argues that the trial court refused to allow Roy Tatum to testify as to what he heard Darby say after Darby allegedly ran away when Richardson shot between his legs on another date.
The testimony to which Darby is referring is the testimony of Roy Tatum which appears in the record as follows:
A. We  like I said, I be around the flats and I was hanging around the flats and one night, you know, we were all hanging around and Darby, you know, he was down there with me. Well, we wasn't together, but we were, you know, around, kind of kicking it around. So he came down and parked his car and left walking, you know. I guess about twenty or thirty minutes later a lot of guys outside of the place, we heard a shot and next thing we know we saw Darby running the opposite way, you know, and by the time I caught up with him he had told me then that 
BY MS. BENNETT: We object to hearsay.
BY MR. MOORE, Continuing:
Q. You can't tell what he said. You can tell, and I wish you would, tell the Jury what was his condition.
A. When I saw him he was scared. He had told me that the guy 
BY MS. BENNETT: I object to what he told him.
BY THE COURT: Sustained.
A. Well, you could see it, you could see 
BY MR. MOORE, Continuing:
Q. That's what I want you to tell about, what you could see, rather than what you heard Darby say.
A. You could see he was scared and he had been running and he was sweating a lot.
The appellant is apparently arguing that he was precluded from presenting evidence that Richardson had shot at him on a previous occasion, that Tatum knew of this matter and that that event had given rise to a reasonable apprehension of harm on Darby's behalf of which Tatum had personal knowledge. In Jackson v. State, 426 So.2d 405, 408 (Miss. 1983) we recognized that much flexibility should be given to defendants in presenting prior harassments, threats and assaults directed toward them. Such evidence is material to the motives of both defendant and the victim. Id. See also Gates v. State, 484 So.2d 1002 (Miss. 1986).
The appellant also argues that by initially excluding evidence that Richardson and Yvonne Tynes were trading food stamps for drugs the trial court prejudicially affected the credibility of Darby's testimony when Darby was later allowed to testify to those same matters. The testimony was eventually elicited from Darby in the presence of the jury and there was no evidence that Darby's credibility was discounted.
The appellant also argues that the trial judge informed the defense counsel that if he brought up Darby's status as a police informer that the court would allow the State to go into all of Darby's prior crimes.
Rule 404(b) of the Mississippi Rules of Evidence applies because the record reflects that the attorney for the State asked a question about "a long record of prior crimes" to which "nothing has happened on most of them." Rules 608 and 609 of the Mississippi Rules of Evidence apply only to other criminal convictions to be used for impeachment purposes. Vick v. Cochran, 316 So.2d 242 (Miss. 1975).
Rule 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, *1173 identity, or absence of mistake or accident.
According to United States v. Beechum, 582 F.2d 898 (5th Cir.1978), where other crimes or acts of the defendant are offered into evidence pursuant to Rule 404(b), a two-step test must be applied. It must first be determined that the evidence possesses probative value that is not substantially outweighed by its potential for undue prejudice, and must meet the other requirements of Rule 403. The other requirements being that before an exception to the general rule excluding evidence of other crimes from admission in criminal cases can be invoked, the trial court must be satisfied that 1) there is plain, clear and convincing evidence of a similar offense, 2) the offense is not too remote in time, 3) the element of the similar crime for which there is a recognized exception is a material issue in the case, and 4) there is a substantial need for the probative value of the evidence. The danger of prejudicial effect inherent in the use of similar acts evidence is such that all prerequisites must be met before the evidence may be admitted. United States v. Silva, 580 F.2d 144 (5th Cir.1978).
In the case sub judice the trial judge stated no reasons for his ruling that all prior crimes committed by Darby (but not necessarily for which he was convicted) would be subject to exploration on cross-examination. The reason Darby wanted to testify to his status as a police informer was to show that Darby knew about Richardson's involvement in illegal activity and that Richardson had reason to fear that Darby would expose the illegal activities. This testimony was obviously relevant to Darby's defense of self-defense since Darby conceivably could have had a reasonable apprehension of bodily harm by Richardson because Richardson knew Darby was an informer.
The general rule in Mississippi is that in criminal trials, with certain exceptions, proof of other criminal conduct by the accused is inadmissible. Tobias v. State, 472 So.2d 398, 400 (Miss. 1985); Donald v. State, 472 So.2d 370, 372 (Miss. 1985); Mason v. State, 429 So.2d 569, 572 (Miss. 1983).
Our cases recognize certain limited exceptions to the rule. According to Tucker v. State, 403 So.2d 1274, 1276 (Miss. 1981):
Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See, Smith v. State, 223 So.2d 657 (Miss. 1969), cert. denied, 397 U.S. 1030, 90 S.Ct. 1274, 25 L.Ed.2d 542 (1970); Cummings v. State, 219 So.2d 673 (Miss. 1969), cert. den. 397 U.S. 942, 90 S.Ct. 954, 25 L.Ed.2d 122 (1970). ([Gray v. State], 351 So.2d [1342] at 1345 [Miss. (1977)]).
The cases hold that admission of proof of other crimes which do not fall into these exceptions must be reversed. Tobias v. State, 472 So.2d 398, 400 (Miss. 1985).
The main question raised in this case is whether or not the court's ruling prevented the appellant, Darby, from presenting his defense.
We find that the trial court erred in ruling that the State could explore prior crimes of the defendant for which he had not been convicted. This rule is settled in Mississippi by Rule 404(b) of the Mississippi Rules of Evidence and numerous decisions of this Court discussed above.
Rule 103 of Mississippi Rules of Evidence states that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and a timely objection is made or the substance of the evidence was made known to the court by an offer of proof or was apparent from the context within which questions were asked.
We find that the right of a defendant to put on evidence that he acted in self-defense is a substantial right as mandated *1174 by Rule 103. The right to due process mandates that the defendant be allowed to show what facts he relied on to give him a reasonable apprehension of immediate harm. Here the defendant was an informer. The victim was engaged in unlawful activity. The victim knew Darby was an informer and the victim knew Darby knew of his involvement in food stamp fraud. Richardson, the victim, had even previously threatened Darby.
By informing defense counsel that the court would allow "other crimes" evidence to be put in evidence the court made an erroneous evidentiary ruling which seriously affected the appellant's rights to due process by preventing him from putting on his defense.
The appellant also argues that the trial court erred when it sustained an objection by the State when defense counsel asked Richardson if he used a gun in committing an auto burglary. Rule 608(b) Mississippi Rules of Evidence provides that specific instances of conduct of a witness are admissible on cross-examination of a witness if probative of truthfulness or untruthfulness but only where the character trait of truthfulness or untruthfulness is being explored. This was not the case here. The defense counsel was simply attempting to impeach the witness' testimony. Therefore, since the witness' character trait for truthfulness was not in issue the court did not err in sustaining the State's objection. However, we find that the trial court did prevent Darby from putting on his defense of self-defense in ruling that the State could explore prior crimes committed by Darby for which he was not convicted. The right to raise defenses and to put on evidence in support of these defenses is a substantial right  that of due process. Therefore, we reverse and remand on this assignment of error.

II. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE PHOTOGRAPHS DEPICTING THE VICTIM'S CAR?
The trial court allowed the photographs showing the automobile Richardson was driving into evidence. The photographs displayed the bullet hole in the automobile. The appellant argues that the court erred because the photographs were prejudicial. Admission of photographs is a matter of discretion of the trial court and this Court will not reverse unless it is shown that this discretion was abused. Watson v. State, 483 So.2d 1326 (Miss. 1986). There was no abuse of discretion. The appellant admitted he fired shots into Richardson's car. For a photograph to be admissible all that must be shown is that it accurately depicts the object or scene purported to be portrayed. Jackson v. State, 483 So.2d 1353, 1355 (Miss. 1986). Richardson testified that the car was his and Darby testified that he shot at the car. This assignment of error is without merit.

III. DID THE STATE VIOLATE RULE 4.06 OF THE CRIMINAL RULES OF CIRCUIT COURT PRACTICE?
On the first day of trial, after the jury was impanelled, counsel for the defense requested production of an affidavit filed by Thurmon Darby against Eugene Richardson on or about May 30, 1983. The affidavit was allegedly based upon the aggravated assault of Darby by Richardson. The court ordered the State to produce the affidavit.
On the second day of trial, the defense introduced a bench warrant dated October 18, only two days before Darby shot Richardson. Darby argued that he signed the affidavit only three days after the assault upon him and that he couldn't remember the date; but, denied that it was signed on a date in such close proximity to the shooting. There was no affidavit introduced that was dated on or about May 30, 1983.
Darby argues that the affidavit was exculpatory and that he should have had it prior to trial. Darby argues that he was prejudiced by not getting it because he could not remember the name of the officer he talked to the day he swore out the affidavit; but, if he had been provided with the affidavit he could have gotten the officer's name from it and then called the officer as a witness.
*1175 The State argued that they searched for the affidavit but could not find it in the police records or anywhere else.
The defense counsel was just as capable as the district attorney's office of searching police records for the affidavit. However, the fact remains that the affidavit which the appellant complains was not produced in discovery and is nowhere in the record. Facts asserted to exist must and ought be definitely proved and placed before us by a record, certified by law otherwise, we cannot know them. Mason v. State, 440 So.2d 318, 319 (Miss. 1983).
We cannot say that the State violated discovery by its failure to produce an affidavit that appears no where in the record. The appellant did receive the warrant issued for Richardson's arrest so we can assume an affidavit was sworn out by Darby. However, the State argued at trial that it could not locate the affidavit. Defense counsel stated that he did not dispute the fact that the State could not find the affidavit. The affidavit appears nowhere in the record. We cannot consider this assignment of error.

IV. DID THE TRIAL COURT ERR IN EXCLUDING THE TESTIMONY OF DEFENSE WITNESS JOE NATHAN McFARLAND?
The appellant, Thurmon Darby, argues that the trial court erred in refusing to allow Joe Nathan McFarland to testify for Darby in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sections Fourteen and Twenty-Six of the Mississippi Constitution. Darby argues that the trial court's refusal to allow McFarland to testify constituted an abuse of discretion by the trial court and was harmful error.
Prior to trial, counsel for the State contacted defense counsel to see if he had been provided with all the discovery he needed in order to represent Darby. Defense counsel admitted he had been provided some discovery by another attorney who had previously represented Darby. However, defense counsel refused to accept a list of witnesses to be called by the State. This refusal was verified in the record several times by the attorney for the State, and by defense counsel's own testimony. Counsel for the defense believed that if he refused to accept the State's list of witnesses to be called that he did not have to produce a list of the witnesses he intended to call. At trial, the State objected to all of the defense witnesses being allowed to testify. The State argued that the list had been intentionally withheld in violation of Rule 4.06 Criminal Rules of Circuit Court Practice. The trial court overruled the objection.
All of the witnesses of the defense, except Joe Nathan McFarland, were allowed to testify. The court excluded McFarland's testimony because his name was not on the list given to the State by Darby's counsel even after the trial court held a hearing on the State's motion to exclude defense witnesses for Rule 4.06 violations. The trial court heard McFarland's testimony in the absence of the jury; but, refused to allow him to testify in front of the jury.
It is clear that defense counsel deliberately violated Rule 4.06. The relevant parts of Rule 4.06 reads as follows:
If the defendant requests discovery under this rule, the defendant shall, subject to constitutional limitations, disclose to the prosecutor and permit him to inspect, copy, test and photograph, the following information and material which corresponds to that which the defendant sought and which is in the possession or control of the defendant or his counsel:
(1) Names and addresses of all witnesses in chief proposed to be offered by the defendant at trial;
(2) Exhibit any physical evidence and photos to be offered in evidence; and
(3) Any reports or statements of experts, made in connection with the particular case.
Defense counsel shall make the foregoing disclosures simultaneously with the corresponding disclosure from the prosecutor.
Except as is otherwise provided or in cases where the witness would be forced to reveal self-incriminating evidence, neither *1176 the counsel for the parties nor other prosecution or defense personnel shall advise persons having relevant material or information, except the accused, to refrain from discussing the case with opposing counsel or showing opposing counsel any relevant material, nor shall they otherwise impede opposing counsel's investigation of the case.
Defense counsel argues that there is no rule or case mandating at exactly what time the attorneys should provide discovery. However, Rule 4.06 specifically states, "Defense counsel shall make the foregoing disclosures simultaneously with the corresponding disclosure from the prosecutor." Defense counsel admitted that the counsel for the prosecution had given the list of witnesses the State intended to call to Darby's original attorney who in turn gave the list to defense counsel. Defense counsel also admitted that the attorney for the State contacted him and attempted to provide discovery to him again but he refused so that he would not be required to reciprocate.
It is readily ascertainable that Rule 4.06 applies to defense attorneys as well as prosecutors and mandates that defense attorneys provide discovery. All one has to do is read Rule 4.06 where it states in pertinent part:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. (Emphasis added)
The rule refers to "a party" rather than the State. Any other interpretation would be in error.
The court did remove the jury from the courtroom to allow McFarland to testify. Therefore, the State was allowed to become familiar with the undisclosed evidence as is required when the court is faced with a discovery violation. Cole v. State, 525 So.2d 365 (Miss. 1987). There are normally two other steps to be taken in situations involving discovery violations. If the party complaining of the discovery violation, after viewing or otherwise becoming familiar with the undisclosed evidence, believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue. The State failed to request a continuance in the case sub judice. The State simply objected to its admission. In the event that the State had requested a continuance the defendant would have had to decide whether or not to proceed to trial and forego using the undisclosed evidence. If the defendant would not be willing to proceed without the evidence, the trial court should grant the requested continuance. Cole v. State, 525 So.2d 365 (Miss. 1987).
The requirements originally set forth in Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring) and upheld in Cole v. State, supra were not followed in the case sub judice. We recognize that even-handed application of Rule 4.06 requires the same procedure to be followed when the State objects to testimony because of a defendant's violation as when the defendant objects for the same reason. Darghtry v. State, 530 So.2d 27 (Miss. 1988).
However, as recognized by Presiding Justice Hawkins in Darghtry v. State, supra, federal constitutional law, set forth in Taylor v. Illinois, 484 U.S. 400, ___, 108 S.Ct. 646, 655, 98 L.Ed.2d 798, 814 (1988) upholds the exclusion sanction in cases where the defendant's discovery violation was "willful and motivated by a desire to obtain a tactical advantage." The record reveals that defense counsel violated discovery even after the court held a hearing on the State's motion to exclude defense witnesses for Rule 4.06 violations. The evidence in the record is uncontroverted that the violations were willful. We find, *1177 in light of the fact that the violation was willful, that the trial court committed no error in excluding the testimony of the witness. However, we limit this holding to the cases in which the violations are intentional and this opinion is in no way intended to compromise our law regarding the procedure set forth in Box v. State, 437 So.2d 19 (Miss. 1983), and Cole v. State, 525 So.2d 365 (Miss. 1987).
We reverse and remand for a new trial based on Assignment of Error I.
REVERSED AND REMANDED.
HAWKINS, DAN M. LEE, P.JJ., and ROBERTSON and SULLIVAN, JJ., concur as to parts I, II, and III.
ROBERTSON, J., concurs as to part IV.
HAWKINS, DAN M. LEE, P.JJ., and SULLIVAN, J., concur in part and dissent in part as to part IV with written opinion.
ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ., dissent with separate written opinion.
HAWKINS, Presiding Justice, concurring in part and dissenting in part as to part IV:
I concur that this case should be reversed for the reasons given in Justice Zuccaro's opinion. I am of the view the circuit court also erred in excluding the testimony of defense witness Joe Nathan McFarland.
We have repeatedly held that where the state violated Rule 4.06, in order to protect himself the defendant must first object, and obtain a recess to interview the witness. Then, even though he finds the witness' testimony will be prejudicial and beyond cure, he cannot simply object to the witness testifying. Instead, he must request that the court continue the case (necessitating a mistrial, of course). If defense counsel fails to specifically request a continuance at this moment in the trial proceedings, he has "waived" his objection to the surprise witness testifying, and no error can be predicated therefrom.
We have held that defense counsel must follow this procedure, even when the violation has been blatant, glaring and a death blow to defendant's case, and no matter that the witness will irretrievably harm the defense in the trial. Defense counsel, after the interview, cannot simply object. He must go further, and move for a continuance. The majority has decreed this.
In addition to the cases cited by the majority, we have also accepted and followed the Box concurring opinion in Henry v. State, 484 So.2d 1012, 1014 (Miss. 1986); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); Jones v. State, 481 So.2d 798, 803 (Miss. 1985). See also, Griffin v. State, 504 So.2d 186 (Miss. 1987); Watts v. State, 492 So.2d 1281, 1290 (Miss. 1986); Hall v. State, 490 So.2d 858, 859 (Miss. 1986); Gray and Nations v. State, 487 So.2d 1304, 1313-14 (Miss. 1986); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).
Recently, we applied the same rule to the state that we have consistently applied to the defense. Houston v. State, 531 So.2d 598 (Miss. 1988); Darghtry v. State, 530 So.2d 27 (Miss. 1988).
Before the ink from Darghtry and Houston has dried out, however, the majority announces a new rule to apply to the state. If the defendant has "willfully" violated the discovery rule the state need not go through the same procedure we have repeatedly required of the defendant. I do not recall, in any of the cases in which we have applied our rule to the defendant, that we inquired whether the state's violation was "willful" or not. It is abundantly clear we have consistently affirmed when the defense was mortally wounded by a surprise witness.
Cole v. State, 525 So.2d 365 (Miss. 1987), is poignantly illustrative. In that case, just prior to his voir dire of the jury, defense counsel specifically asked the state's attorney if one Tracey Pope would be called as a witness. Upon being assured that she would not, defense counsel then told the jury that the state would have no eyewitnesses *1178 who saw West Cole at the crime scene.
Three days later, in mid-morning in the middle of the trial, the state did indeed parade Tracey Pope to the witness chair. Not only that, the state then strenuously objected to defense counsel's request to interview her prior to her testifying. And further, the district attorney moved the circuit judge to advise Pope that he, the district attorney, could be present when defense counsel interviewed her, and to also advise her that she did not have to talk to defense counsel at all unless she wanted to.
The circuit judge at least magnanimously permitted defense counsel to interview Pope. This interview between defense counsel and Pope obviously disclosed that her testimony was going to nail his client to the cross. It would also make defense counsel appear less than truthful to the jury, because he had told them during voir dire there would be no eyewitnesses of Cole being at the scene of the crime.
Defense counsel then objected to her testifying because of the discovery violation. Cole v. State, 525 So.2d at 376-380.
When the case reached this Court on appeal, because a rather inexperienced, as well as stunned and discombobulated defense attorney in the heat of that trial was too rattled to utter the magic words, "I want a continuance," in which the majority has taken such immense pride of authorship, we said, "too bad." It wasn't enough to simply vigorously object to this damning evidence. We held Cole had "waived" his right to object.
Cole sits on death row solely because of his lawyer's failure to utter those rabbit's foot words "I move for a continuance," the majority found so terribly important. Cole, 525 So.2d 365, 367, 381-82.
I do not approve of what defense counsel did in this case, but compared to what happened in Cole, Darby's lawyer is in a bush league.[1]
The majority's sense of even-handed justice, I regret to say, escapes me.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
ANDERSON Justice, dissenting:
The majority would reverse the conviction of Thurman Darby on the grounds that he was unable to present his defense precisely as he would have liked to present it. The record clearly establishes that Thurman Darby shot Eugene Richardson, point blank, three times. No direct evidence was introduced of any overt hostile act by Richardson immediately prior to the shooting. Darby's self defense was based on Richardson's threats and intimidation of Darby and his family.
This issue turns on three rulings of the trial court. First, Darby attempted to present evidence through the testimony of Roy Tatum, that the victim, Eugene Richardson, had shot at Darby on a previous occasion. Tatum's knowledge of the shooting was obtain from Darby himself. Tatum heard a shot, but did not see the incident. The prosecution objected to the question of how the shooting occurred, as hearsay. This objection was properly sustained. We are required to allow a defendant flexibility in presenting evidence of prior threats, Jackson v. State, 426 So.2d 405, 408 (Miss. 1983), but not at the expense of fundamental tenets of evidence law. Rule 602 requires personal knowledge of the matter about which a witness will testify.
Roy Tatum told all that he knew about the event, he told the jury that Darby appeared frightened after the shot. By his own testimony he did not see the shooting itself. Therefore, the hearsay evidence was properly excluded.
The second ruling at issue concerned evidence that Richardson and Yvonne Tynes, the friend of both victim and defendant, were trading food stamps for drugs. Thurman Darby, who took the stand in his own defense, wanted to testify that these illegal *1179 activities were known to him; that Richardson was aware that Darby was a police informant; that Richardson had threatened Darby; that Darby took those threats seriously; and that Richardson was capable of harming Darby and/or his family.
The trial court initially heard Darby's testimony out of the presence of the jury. The jury was then allowed to hear the following:
DIRECT EXAMINATION CONTINUES
BY MR. MOORE:
Q. Tell the Court and the Jury, please, about the instances, what happened and so forth when you first began having problems, if any, with Eugene Richardson. Start over and just tell it.
A. Okay. When I first started having problems with Eugene Richardson was during the time that him and Miss Tynes was seeing each other. Okay. During this time he had informed me as to the fact that if I or anybody would do anything to this lady what he would do.
Q. Well, what did he say he would do?
A. He said that he would cut their sack  test tubes out, you know, a man's privates, and what he had done.
* * * * * *
Q. Were you afraid of him?
A. Yes, sir.
Q. Now you were afraid of him because of what?
A. I was afraid of him because of what he had told he had done in Parchman and what he would do to, excuse the expression, to a nigger and they would carry him to Whitfield and get him reevaluated. I like to use the term "black man" if I can.
* * * * * *
Q. All right. Tell what you know now through what Eugene Richardson told you and what you observed yourself about the activities there at that place you're talking about that made Eugene Richardson mad at you, if any.
BY MS. BENNETT: Your Honor, I object to it not being relevant.
BY THE COURT: Overruled.
A. Okay. They was selling food stamps at Salvage Mini Stop for a reefer or trading food stamps for fuel, gasoline and other things. And, of course 
BY MR. MOORE, Continuing:
Q. Who was they?
A. Yvonne and Eugene and a couple of more gentlemen down there.
Q. Selling food stamps?
A. Trading food stamps for marijuana or gasoline.
* * * * * *
Q. All right. Now as a result did you learn further things that made you afraid?
A. Yes, sir.
Q. What were you afraid of that would happen to you?
A. I was afraid of me getting hurt or something happening to my mother. I only have one mother and my nieces and nephews and other things, and if I had left her alone I  I was under the impression that if I would leave her alone then this would be over with. I would have never come forth and brought no information like that, you know.
Q. All right. Well, did you believe it?
A. Yes, sir, I did.
Darby then testified that Richardson had threatened him with a gun and shot at his feet. He stated that, on reporting these threats to various police officials he had been advised of his right to protect himself and his family.
The third, and primary, ruling on which the majority would overturn this conviction was the statement by the court that if Darby introduced his role as an informant, the State would be allowed, on cross-examination, to introduce his arrest record.
The majority bases its finding on its construction of Rule 404(b). The majority has narrowly defined the arguments presented here. Their most basic error is that the *1180 State did not intend to present the evidence of Darby's past crimes as part of its case in chief, but only intended to use this evidence on cross-examination to impeach or discredit Darby.
What was Darby attempting to accomplish by introducing the fact that he was a police informant? First, he was showing that he feared reprisal from Richardson. Second, he wanted to convey to the jury the fact that Richardson was a dangerous villan. And, thirdly, he wanted to clothe himself in the mantle of a law enforcement officer, a peaceful hero.
By characterizing himself as a police informant, Darby was attempting to relay a subtle message to the jury. In essence, he was placing his character in issue. The only issue that is relevant to a plea of self-defense is a "reasonable apprehension of harm." Darby conveyed this apprehension to the jury.
Darby related his version of the events of October 20, the day of the shooting.
... And I came over to the car and when I come to the car Nugene reached down in the glove compartment after something. I saw the handle of a gun and they said, "He's got a gun." I jumped back and when I jumped back I shot. When I shot one time I thought I had hit Nugene but apparently through me being fearful and scared and stuff, I hit the door. When I hit the door I didn't know that I had hit the door or nothing like that. Then Nugene was coming out of the car like and when he was coming out of the car I shot again and I shot again and that's all I know. And then all of it happened in about fifteen or twenty seconds.
Q. Did you shoot him on the ground?
A. No, sir.
Q. Did you kick him in the face?
A. No, sir.
On cross-examination the prosecution brought out that Darby was an informant in the following manner:
Q. You're a police snitch, aren't you?
A. I wouldn't say a snitch.
Q. Well, what would you say it was?
A. I would consider myself a citizen of the United States and if I saw something that really wasn't going like it was supposed to, you know, I would voice my opinion or if they asked me something I would say something about it.
The prosecution then gave Darby the opportunity to establish the precise reason he was frightened of Richardson with the following question:
Q. Was Richardson concerned  are you trying to lead the jury to believe that Richardson was concerned that you were going to tell the police something about him?
A. I don't know if Richardson had sense enough to be concerned or what, Miss, but any time that a person will let a woman lead him or get him into a lot of trouble or something like that, then I don't consider  an adult man, I don't think a person is responsible that much.
The majority would overturn this conviction only because Darby's identity as police informant was extracted on cross-examination, not on direct.
The opportunity of cross-examination is an essential safeguard of the accuracy and completeness of testimony. 5 Wigmore, Evidence § 1367.
"The purpose of cross-examination is to test the truthfulness of the witness ... or to impeach or discredit the witness." 81 Am.Jur.2d, Witnesses, § 463 at p. 471. "This right includes to explore witness's interests, motives, inclinations, prejudices, ... ." Id., § 520 at p. 524.
Darby's desire to portray himself as a police informant carried with it a suggestion that he was an upstanding peaceful citizen assisting law enforcement officers out of a patriotic motive. The prosecutor had every right to reveal the true motive for Darby's assistance, which was to keep himself out of jail. If a police informant is testifying for the prosecution, the defense certainly has a right to explore the witness's motive, whether it be a plea bargain arrangement or freedom from prosecution.
*1181 It is important to point out, however, that Darby's arrest record was never revealed to the jury. But his role as an informant and his fear of Richardson were clearly presented.
Thurman Darby was not denied due process. "A person charged with crime is only entitled to a fair trial, and not a perfect trial." Stewart v. State, 229 So.2d 53 (Miss. 1969).
The jury had before it all of the relevant evidence on which to base its decision.
In Groseclose v. State, 440 So.2d 297 (Miss. 1983), we said:
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.
440 So.2d at 300.
This entire assignment of error is much ado about nothing. I would affirm.
ROY NOBLE LEE, C.J., and PRATHER, J., join this opinion.
NOTES
[1] When an attorney violates a discovery rule, there are sanctions other than taking it out on his client, who may have known nothing about it.