LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Marco Wright was convicted in the Coahoma County Circuit Court of statutory rape and sexual battery. He was sentenced to fifteen years on each count to be served in the custody of the Mississippi Department of Corrections with the sentences for each count to run concurrently.
¶2. Wright now appeals asserting the following issues: (1) the trial court erred in not allowing the defense’s proposed expert witness to testify, and (2) the trial court erred in failing to grant a new trial. Finding no error, we affirm.
FACTS
¶ 3. S.H.[1] testified that Wright, her mother’s boyfriend, drove her in her moth *39 er’s car to a dirt road and raped her. S.H. was fourteen years old at the time, and Wright was thirty-five years old. When Wright and S.H. arrived home, S.H. told her mother Wright had raped her. Wright denied it, and S.H.’s mother refused to take her to the hospital. The next day after school, S.H. told a neighbor what had happened, and the neighbor called her son, Lugene Randolph, a police officer with the City of Coahoma Police Department. Officer Randolph contacted Investigator Neal Mitchell with the Coaho-ma County Sheriffs Department because the incident occurred outside the city limits of Coahoma. S.H. was taken to her house where she retrieved her clothing from the night before. S.H. was taken to the hospital, and a rape kit was administered. A DNA test showed Wright’s DNA was present in S.H.’s vaginal area.
DISCUSSION
I. EXCLUSION OF EXPERT TESTIMONY
¶ 4. Wright argues the trial court erred in allowing the State’s medical witnesses to testify while excluding his proposed medical witness.
¶ 5. On January 11, 2010, the State disclosed the following witnesses for trial: Joseph Heflin and Steven Little from the Mississippi Crime Laboratory and Jeanette Ratliff, the nurse who performed the rape kit on S.H. On July 22, 2010, supplemental discovery was faxed to Wright’s counsel. This discovery identified potential witnesses Gayle Reed and Nell Brock, nurses who took DNA samples from Wright. Brock did not testify at trial.
¶ 6. On Sunday, July 25, 2010, the day before trial was set to begin, Wright’s counsel faxed supplemental discovery to the prosecutor identifying John C. Fisher as an expert witness for trial. The doeument stated that Fisher was “expected to confirm or deny whatever scientific evidence may be presented by the newly discovered witnesses of the State, in addition to any other possible scientific theories which may be applicable in this cause.”
¶ 7. During a break at the trial, a conference was held outside the presence of the jury to discuss Fisher’s testimony. Wright’s attorney argued that despite the late designation, Fisher should be allowed to testify regarding DNA evidence. Wright’s attorney stated Fisher would testify regarding DNA transfer from one person or object to another. Specifically, Fisher would testify as to whether Wright’s DNA could have been transferred to S.H.’s vaginal area by S.H. wearing her mother’s underwear. The trial court asked Wright’s attorney why Fisher was not designated sooner, and Wright’s attorney replied:
[WRIGHT’S COUNSEL]: ... I did not think that the DNA evidence would be able to come in because the State had not noticed me with what I believe was a critical witness for them to be able to get the DNA evidence in.... Because I did not believe that DNA would come in, [Y]our Honor, and therefore I did not go out and hire this witness out of my own pocket....
BY THE COURT: I cannot be faulted for your beliefs. But I mean you can’t deny that you knew the State intended to introduce DNA evidence.
[WRIGHT’S COUNSEL]: I knew that the State intended to try to introduce DNA evidence. I would still maintain my position that had [Reed] not come and testified that she took DNA from my client, all the case law that I have seen has said that when courts have been affirmed for allowing it in, it’s because the police officer who was there witnessed it happen. In this *40 case there was no witness, other than these women [ (Reed and Brock) ], that saw any DNA taken from my client....
¶ 8. The trial court then allowed Fisher to give a summary of his testimony outside the presence of the jury. Fisher stated that his specialty was cancer-cell mutation, but he understood the transfer of DNA from one object to another. The trial court found Fisher to be a possibly critical witness. However, the trial court excluded Fisher as a witness because of the late designation. It found Wright’s counsel knew DNA evidence was relevant as early as December 2009. The trial court also noted the statement in discovery regarding the substance of Fisher’s expected testimony fell “woefully short” of the requirements of Uniform Rule of Circuit and County Court 9.04.
¶ 9. Rule 9.04(C)(1) states:
C. If the defendant requests discovery under this rule, the defendant shall, subject to constitutional limitations, promptly disclose to the prosecutor and permit the prosecutor to inspect, copy, test, and photograph the following information and material which corresponds to that which the defendant sought and which is in the possession, custody, or control of the defendant or the defendant’s attorney, or the existence of which is known, or by the exercise of due diligence may become known, to the defendant or defendant’s counsel:
1. Names and addresses of all witnesses in chief which the defendant may offer at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statements made by any such witness.
¶ 10. A defendant has the constitutional right to call witnesses in his favor. See U.S. Const, amend. VI; Miss. Const. art. 3, § 26. A defendant must also meet certain discovery requirements regarding the testimony of witnesses. If the trial court determines that a defendant’s discovery violation is “willful and motivated by a desire to obtain a tactical advantage,” the witness may be excluded from testifying. Darby v. State, 538 So.2d 1168, 1176 (Miss.1989); see also Morris v. State, 927 So.2d 744, 747 (¶ 9) (Miss.2006).
¶ 11. In deciding to exclude Fisher’s testimony, the trial court stated the following:
What I’m concerned about is that [Wright] knew from December of '09 that DNA would be an issue. You apparently gambled your entire defense on a fact that [the State] [did not] divulge the name of a person — well, [did not] specifically divulge the name of a person who took a swab from your client. That’s it. That name was apparently in materials that were disclosed back in December; it just [was not] listed as a witness. And now, you know, I mean you’ve put the whole [defense] on that, it doesn’t go your way, and I’m faced with a disclosure from the [d]efense that is of absolutely no value. All [the disclosure] does is give a name of an individual. It does have a [curriculum vitae]. [The disclosure] gives nothing as far as opinions, reports, what [the expert] is going to say or anything else. And you [ (Wright) ] take umbrage to the fact, although that [sic] this woman’s name was in these discovery materials back in December, you knew DNA was going to be an issue, yet you wait until Sunday before the Monday of the trial to even talk to somebody about DNA? Even in the unlikely event that it might not go your way, it would have seemed to me that the more prudent thing would have been to cover both bases. You chose *41 not to do so. Which is certainly your choice. That’s what’s ... disturbing.
As stated above, the trial court found Wright knew the DNA evidence was relevant as early as December 2009. Furthermore, Wright failed to follow the dictates of Rule 9.04(C)(1). The trial court excluded Fisher due to the late designation, finding that allowing Fisher to testify would be unfair to the State. We agree with the trial court’s decision. This issue is without merit.
¶ 12. We further note that expert testimony must be based upon credible evidence in the case. Williams v. State, 35 So.3d 480, 486 (¶ 19) (Miss.2010) (quoting Catchings v. State, 684 So.2d 591, 596 (Miss.1996)). According to the record there was no credible testimony to support Wright’s theory that S.H. was wearing her mother’s underwear. The only testimony came from S.H.’s mother, a witness for Wright who stated on redirect she told Investigator Mitchell that S.H. had been wearing her underwear. Investigator Mitchell also testified that one of Wright’s statements to the authorities said S.H.’s mother “later told me [S.H.] had been wearing her panties.” Another statement Wright made to the authorities failed to disclose this fact. Wright failed to develop this theory during trial.
II. MOTION FOR A NEW TRIAL
¶ 13. In this issue, Wright reiterates his argument from issue one. Wright argues the trial court erred in denying his motion for a new trial because Fisher’s testimony was excluded. Wright asserts Fisher would have testified that Wright’s semen could have been transferred to S.H. through contact with her mother’s underwear. As discussed in issue one, we cannot find the trial court was incorrect in excluding Fisher’s testimony. This issue is without merit.
¶ 14. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, STATUTORY RAPE, AND COUNT II, SEXUAL BATTERY, AND SENTENCES OF FIFTEEN YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND GRIFFIS, P.JJ.

. This Court declines to identify minor victims of sexual crimes.