556 So.2d 681 (1989)
Harvey Tyronne TANNER, a/k/a Freddie Tanner, a/k/a Rico Brown
v.
STATE of Mississippi.
No. 07-58877.
Supreme Court of Mississippi.
December 20, 1989.
Rehearing Denied February 28, 1990.
*682 Tom T. Ross, Jr., Ross Hunt Spell & Ross, Clarksdale, for appellant.
Mike C. Moore, Atty. Gen., Jackson, Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BLASS.
DAN M. LEE, Presiding Justice, for the Court:
Harvey Tyrone Tanner was convicted in the Circuit Court of Coahoma County, Mississippi, on a charge of receiving stolen property pursuant to Miss. Code Ann. § 97-17-69 (1972). Having adjudged Tanner to be an habitual offender in accordance with Miss. Code Ann. § 99-19-81 (Supp. 1987), the court sentenced him to a term of five years in the custody of the Mississippi Department of Corrections, with such sentence to be served without reduction, suspension, parole or probation. Aggrieved by the judgment entered against him, Tanner (Appellant hereafter) has perfected an appeal to this Court, raising a single issue:
Whether the Trial Court erred in not granting a mistrial "when it was discovered that the State had not disclosed exculpatory evidence?"
Finding the learned trial court did err, we reverse and remand.

STATEMENT OF THE FACTS
Steve Young, witness for the State, was the owner of Young's Auto Repair Shop in Clarksdale. When he opened his shop the morning of February 20, 1987, he noticed his air compressor "was gone." He had not given anyone permission to remove it.
According to Young's testimony, between 6:00 and 7:00 that evening, Appellant called on Young and asked him to "step outside." Appellant then told Young, "Well, I know where your compressor is. If you will give me fifty dollars I will get it back... ." When Young asked him where the compressor was, Appellant replied, "[I]t is out in Lyon Subdivision." Appellant also told Young he had "heard some young dudes" discussing the fact that they had stolen the compressor from Young. Mr. Young then testified as follows:
And [Appellant] said, "Well, if you give me twenty-five dollars I will get a guy with a truck to go pick it up because I have to give him ten dollars to pick it up." So I said, "No, I am not going to give you the money until I see my compressor." So he went on and in about ten to fifteen minutes him and the guy [referring to States witness Bennie Jackson] was back with the compressor on a truck.
At this point, Young seemed to stall appellant and his companion Bennie Jackson long enough to allow one of his employees, Lee Brantley, to call the police. Thereafter, as appellant and Bennie Jackson were preparing to unload the compressor, the police arrived. Young heard appellant tell the policeman that the compressor had been "up beside the railroad track or the garbage dump or something."
State's witness, Bennie Jackson, testified that during the afternoon of February 20, *683 1987, he was watching television in his house when appellant arrived and asked him
to get my truck and carry and unload an air compressor to Steve Young on Fourth Street and he would pay me ten dollars to do that.
Jackson claims appellant told him the compressor was "at my [Appellant's] house" and that it belonged to appellant's brother-in-law, Steve Young. Jackson agreed to help, and the pair rode in Jackson's truck "onto Coahoma Street in the alley" to appellant's house. The compressor "was covered up behind it by a six foot fence." After some struggling, Jackson and Tanner "got it and loaded it up" and took it to Steve Young's shop.
State's witness, Donald Province testified that he was a Clarksdale Police Officer and received a call to go to Young's repair shop on February 20. When he arrived there, he saw "a pick-up backed up to one of his [Young's] back doors and there was a compressor on it." Standing beside the truck were appellant, and State's witnesses, Steve Young, Lee Brantley and Bennie Jackson. Officer Province prepared an offense report which in critical part for purposes of this appeal stated
"I [Officer Province] talked to Bennie Jackson in private and he said that Tyrone [appellant] came to his house and asked him to help him carry a compressor back to Steve. He said that he was to receive ten dollars for helping Tyrone. He further stated that Tyrone told him to drive to the city dump. The compressor was sitting off of the gravel road there."

Nevertheless, on cross-examination, Officer Province testified that Jackson did not tell him that appellant had told Jackson to drive to the city dump.
On direct examination, appellant testified that several gang members approached him to ask him if he was interested in purchasing an air compressor. He asked them where they came from and stated that the victim Steve Young was some kin to him. Next, he approached Steve Young to let him know where his compressor was located. Appellant claims he told Young where it was and offered to "Let's go get it." He said his truck was gone out on a run and I went and got Bennie Jackson and asked him would he go and carry me to the city dump to pick up this air compressor and carry it to Steve Young and he said yes.' On cross-examination, when asked if appellant knew whether Jackson had any reason to give false testimony against him (appellant [by his saying they picked up the compressor at Tanner's home, not at the city dump]), appellant responded, "Well, he's lying. Because we both went out to the city dump."

ANALYSIS
During the testimony of Officer Province, who testified at trial after Jackson, the defense became aware of the offense report and its inconsistency as to the city dump. The statement made by Jackson to Officer Province in the offense report was clearly in contradiction to what Jackson testified to at trial and, in fact, supports the testimony of appellant.
To reiterate, state's witness Jackson testified at trial that appellant came to him and asked to borrow his truck. Jackson further testified that he assisted appellant in loading an air compressor onto his truck, this air compressor being located at the home of appellant on Coahoma Street. Appellant testified that several young boys had told him that the air compressor was at the City Dump and, in fact, that is where the air compressor was picked up by him and Jackson. Province's offense report clearly impeached the state's witness, Jackson. By not being aware of this offense report prior to the time when Jackson was testifying on the witness stand deprived appellant of several critical options. First, defense counsel was not able to impeach Jackson's in-court testimony while Jackson was on the stand without the use of the contradictory statement made by Jackson in the offense report. Secondly, if the defense had been aware of this discoverable material, other witnesses could have been identified and called to further enforce Province's offense report recollection  that *684 the compressor was located at the city dump  which was Jackson's statement at the scene.
Discovery had been invoked and was made by appellant and appellee prior to trial. Clearly, this information was material in nature. The fact is someone  witness Jackson or appellant Tanner  was in error about where the air compressor was located and appellant was entitled to flush out this matter thoroughly in the presence of the jury. It is the jury's job to determine the credibility of both the witnesses and the evidence before them. In the case sub judice, this was not possible because the offense report was not divulged by the state prior to trial; thus, appellant was not given the opportunity to put the offense report to any beneficial use.
It is true that this Court struggles with most Rule 4.06 cases. This well-known fact was succinctly documented by Justice Robertson in Cole v. State, 525 So.2d 365 (Miss. 1987), as follows:
We have decided so many Rule 4.06 cases and have decided them so inconsistently.
For example, we have held on some days that only the defendant and his counsel are in a position to judge the materiality of discoverable but undiscovered evidence. See White v. State, 498 So.2d 368, 370 (Miss. 1986); Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986); Johnson v. State, 491 So.2d 834, 837 (Miss. 1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986). On other days we recognize a quite different, objective test for materiality. See Boches v. State, 506 So.2d 254, 263 (Miss. 1987).
On some days we hold that a defendant must show prejudice before he may parlay a discovery violation into reversal on appeal. See Moore v. State, 508 So.2d 666, 668 (Miss. 1987); Buckhalter v. State, 480 So.2d 1128, 1129 (Miss. 1985); McKinney v. State, 482 So.2d 1129, 1130 (Miss. 1986). On others we say little or nothing of any prejudice test en route to reversal. See Henry v. State, 484 So.2d 1012, 1013-14 (Miss. 1986); Foster v. State, 484 So.2d 1009, 1011 (Miss. 1986); Ford v. State, 444 So.2d 841, 843 (Miss. 1984). On some days we find the earth flat. On others we see it square.
Id. at 382.
Regardless of whatever inconsistency this Court may have demonstrated with regard to interpreting the mandates of Rule 4.06, it is clear to this Court that on the facts of this case alone, the non-disclosure of the offense report prejudiced the defense in presenting its case and should have been disclosed by the state.
Furthermore, the trial judge compounded the problem by refusing to allow the offense report into evidence after defense counsel stumbled upon its existence while cross-examining Officer Province. Had the jury been given the opportunity to view the offense report in light of both Jackson's and Officer Province's testimony, perhaps we would not now be compelled to reverse this case. However, the crowning blow occurred when the trial judge refused to grant appellant a mistrial upon defense counsel's motion immediately following the state's case-in-chief.
Accordingly, we have no alternative except to reverse this case and vacate the conviction and sentence and remand to the Circuit Court of Coahoma County, Mississippi, for a new trial or other disposition not inconsistent with this opinion. All costs of this appeal are assessed to Coahoma County.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS, P.J., specially concurs by separate written opinion, joined by BLASS, J.
HAWKINS, Presiding Justice, specially concurring:
While exculpatory material should be disclosed well in advance of trial, as a general rule so long as the jury is fully informed of it, the defendant is not harmed by the delay in learning of it until trial. Where, however, the delay prevents him from calling *685 witnesses who might corroborate the exculpatory evidence, and as here is actually prevented from offering the material into evidence at all, then of course it is a reversible error.
BLASS, J., joins this opinion.