# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

CW03-0565
CA03-0596

RICHARD MCNABB

VERSUS

LOUISIANA MEDICAL MUTUAL INSURANCE
COMPANY AND DR. CLINTON E. HART

**********

SUPERVISORY WRIT OF REVIEW AND APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 01-2108
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ned E. Doucet, Jr., Chief Judge, Oswald A. Decuir, and Marc T. Amy, Judges.

WRIT GRANTED IN PART AND MADE
PEREMPTORY; DENIED IN PART.

JUDGMENT ON APPEAL AFFIRMED;
MOTION TO DISMISS DENIED.

DAMAGES FOR FRIVOLOUS APPEAL DENIED.

John E. Bergstedt
John Gregory Bergstedt
The Bergstedt Law Firm
Post Office Box 1884
Lake Charles, LA 70602-1884
(337) 436-4600
COUNSEL FOR DEFENDANTS/RESPONDENTS:
     Louisiana Medical Mutual Insurance Company
     Dr. Clinton E. Hart
Michael Keith Prudhomme

**Thomas Patrick LeBlanc**
**Lundy & Davis**
**Post Office Box 3010**
**Lake Charles, LA 70602**
**(337) 439-0707**
**COUNSEL FOR INTERVENOR/APPELLANT/APPLICANT:**
    **Louisiana Patients' Compensation Fund**

**Michael H. Schwartzberg**
**Vamvoras & Schwartzberg**
**1111 Ryan Street**
**Lake Charles, LA   70601**
**(337) 433-1621**
**COUNSEL FOR PLAINTIFF/APPELLEE/RESPONDENT:**
    **Richard McNabb**

AMY, Judge.

The plaintiff filed suit alleging injury following a procedure to remove a pterygium on his right eye. A jury found in favor of the plaintiff, awarding $300,000 in general damages. The Louisiana Patients' Compensation Fund intervened and appealed the judgment, advancing arguments regarding the substance of the verdict. Subsequently, the plaintiff and the defendant physician entered into a settlement for the physician's statutory limit under the Medical Malpractice Act. A petition for approval of the settlement was filed with the trial court. The settlement was approved. In a writ application to this court, the LPCF asserted that the trial court was without jurisdiction to consider a post-appeal petition for approval of settlement. The writ application was consolidated with the merits of the LPCF's appeal. Subsequently, the plaintiff filed an answer to the appeal, seeking damages for frivolous appeal. This opinion addresses each of these filings. For the following reasons, the judgment approving of the post-trial, post-appeal settlement is affirmed in part and vacated in part. Accordingly, the writ is granted in part and made peremptory. The trial court's judgment on the merits of the case, the subject of the appeal, is affirmed. The motion to dismiss the appeal is denied, as is the request for damages for frivolous appeal.

**Factual and Procedural Background**

The multiple filings addressed in this opinion relate to damages allegedly stemming from a 1998 eye surgery. The record indicates that, in 1997, the plaintiff, Richard McNabb was diagnosed as having a pterygium on his right eye by Dr. Kenneth Harper, an ophthalmologist. The record reveals that a pterygium is a growth on the outside layer of the eye. Although the pterygium may start as a small growth in the corner of the eye, it may slowly grow over the cornea of the eye. Dr. Harper explained that the pterygium was more than likely caused by a previous eye injury and

was reaching the point in its growth where it interfered with the vision in the plaintiff's right eye. He described the removal procedure as elective in nature. Mr. McNabb twice scheduled to have the pterygium removed, but never had the procedure completed. Dr. Harper testified that he was under the impression that the plaintiff was cautious or apprehensive about the surgery.

On September 5, 1998, the plaintiff reported to Dr. Clinton Hart, an ophthalmologist. Dr. Hart recorded the plaintiff's history of having had a previous eye injury and also diagnosed the plaintiff as having a pterygium on his right eye. He recommended that the pterygium be removed, scheduling the procedure for November 23rd. Dr. Hart explained that his routine in such situations was to explain to the patient the risks and comparative risks associated with the procedure. According to Mr. McNabb, Dr. Hart told him that the procedure was a simple operation. He denied that Dr. Hart informed him of any complications or that he was at an increased risk from the surgery due to a previous injury.

The procedure was performed on November 23rd. Following the surgery, Mr. McNabb reported to Dr. Hart's office for post-operative visits on November 24th and 28th as well as on December 3rd. Dr. Hart's notes from these visits do not reflect any observations regarding concerns over the healing process.

Mr. McNabb explained that, on the morning of December 8th, he was eating breakfast when he heard a "pop" or "ping" from his eye. He stated that he saw colors of the rainbow and that, later in the day, he contacted Dr. Hart's office to report the event. The plaintiff explained that his message to Dr. Hart was not returned. He waited until his previously scheduled appointment on December 11th to report to Dr. Hart. Mr. McNabb testified that, on that date, he told Dr. Hart that he could not see

2

with the eye and that upon examination of the eye, Dr. Hart became pale and left the room.

According to Dr. Hart, the exam revealed that Mr. McNabb had suffered a "corneal melt." This process is a thinning of the eye tissues, which, in this case, resulted in a perforation of the cornea. Following the discovery, Dr. Hart sought the assistance of his son, Dr. William Hart, an ophthalmologist who practiced with his father. Dr. William Hart explained that although he was initially called in to observe the condition, he suggested that he perform a conjunctival patch graft to protect the eye. Mr. McNabb was then referred to Dr. Marshall Bowes Hamill, a corneal specialist at Baylor College of Medicine in Houston.

Upon presentation in Houston the following day, Dr. Hamill performed a patch graft, which was initially successful in sealing the hole left by the corneal perforation. A cataract subsequently formed, however, prompting Dr. Hamill to perform a second surgery to try to remove the cataract on March 31, 1999. By January 30, 2000, Mr. McNabb's patch graft had become opaque hindering his vision and prompting him to elect a corneal transplant. Dr. Hamill performed the transplant in February 2000. Dr. Hamill described Mr. McNabb as having performed reasonably well during the year of 2000. However, by 2001, Mr. McNabb's vision began deteriorating and, at the time of his August 2001 deposition, Dr. Hamill described Mr. McNabb's vision in his right eye to be legally blind if left uncorrected. He was hopeful that Mr. McNabb could be fitted with a contact lens in the future to improve his vision.

At Mr. McNabb's request, a Medical Review Panel was convened to consider his treatment by Dr. Clinton Hart. He asserted a number of breaches of the standard of care. In an opinion joined by two of its members, the Medical Review Panel concluded that: "The evidence supports the conclusion that the defendant, Clinton E.

3

Hart, failed to comply with the appropriate standard of care as to the issue of informed consent detailed herein." In particular, the two physicians concluded that there was lack of evidence indicating that a written, informed consent was completed by Mr. McNabb prior to the pterygium surgery. All three of the physicians concluded that: "It appears from the records provided that the excision of the pterygium and the application of the strontium 90 by Dr. Hart were done appropriately, and the post-operative complication of corneal perforation was recognized and dealt with in an appropriate manner."

The instant matter was instituted by a petition filed on April 24, 2001. Dr. Clinton Hart and his insurer, LAMMICO, were named as defendants. The petition alleged negligence in the failure to obtain informed consent, improper surgical technique or over-radiation of the eye, and substandard post-operative procedures prohibiting post-surgical intervention to decrease damage from the corneal thinning. The matter proceeded to trial. Prior to submission to the jury, the trial court entered a directed verdict as to Dr. Hart's failure to disclose risks associated with the pterygium surgery. The jury additionally concluded that Dr. Hart breached the standard of care in his post-operative treatment of Mr. McNabb. Both breaches were found to have caused injury. The jury further found a breach of the standard of care in the surgical procedure, but concluded that this was not a cause of injury. The jury awarded damages in the amount of $300,000.

On November 15, 2002, the Louisiana Patients' Compensation Fund intervened in the matter and, thereafter, filed a petition for appeal. The suspensive appeal was granted on January 6, 2003. Subsequently, the plaintiff filed a Petition for Approval of Agreed Settlement with the trial court. The plaintiff informed the trial court that he and Dr. Hart had reached a settlement whereby Dr. Hart and LAMMICO would

4

pay to the plaintiff $115,000 plus court costs.[1]  In exchange, the plaintiff would dismiss the suit against them with prejudice.  Dr. Hart was to remain in the suit as a nominal defendant for purposes of the Medical Malpractice Act.  The LPCF asserted an exception to the petition for approval, contending that the trial court lacked jurisdiction to consider the petition for approval of settlement as it was preceded by an order of suspensive appeal.  Furthermore, the LPCF argued that a post-appeal settlement between the parties must be treated as a partial satisfaction of judgment and not as a settlement under La.R.S. 40:1299.44(C)(1) which would establish liability on the part of Dr. Hart.  Following a hearing, the trial court approved the settlement and denied the exception finding that jurisdiction existed and that liability was established.

The LPCF filed an application for supervisory writ of review of the approval of settlement by this court.  The matter was consolidated with the previously filed appeal on the merits.  The plaintiff subsequently filed an answer to the LPCF's appeal of the merits of the judgment, asserting entitlement to damages for frivolous appeal. The plaintiff also filed a motion seeking dismissal of that portion of the appeal relating to liability issues as, the plaintiff contends, the settlement approval precludes litigation of liability.  This opinion addresses each of these filings.

On the merits, the LPCF assigns the following as error:

_____

[1]With regard to a qualified health care provider's responsibility under the Medical Malpractice Act, La.R.S. 40:1299.42(B) provides:

> B.    (1)    The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and costs.

> (2)    A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars, plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.

1)      The trial court erred in entering a directed verdict in favor of plaintiff concluding there existed a material risk of the pterygium surgery unknown to plaintiff and that Dr. Hart failed to inform plaintiff of that material risk, as sufficient evidence was presented on these issues to permit reasonable jurors to reach differing conclusions.

2)      Assuming a material risk of the pterygium surgery unknown to plaintiff was not disclosed by Dr. Hart, the jury erred in finding causation on plaintiff's claim of informed consent, in light of the clear and overwhelming evidence that plaintiff would have undergone the surgery notwithstanding the disclosure by Dr. Hart of all material risks.

3)      The trial court committed reversible error in redacting the medical review panel opinion and admitting only a portion of the opinion into evidence in contravention of the express provisions of the Medical Malpractice Act, La.R.S. 40:1299.47(G)-(H).

4)      The trial court committed reversible error by improperly commenting upon the evidence and thereby depriving Dr. Hart and LAMMICO of a fair trial on plaintiff's claim that Dr. Hart's post-operative care fell below the applicable standard of care.

**Discussion**

Writ Application

*Post-Appeal Approval of Settlement*

We first address the LPCF's writ application regarding the settlement as its determination affects the treatment of the appeal on the merits. Advancing several assignments of error in this writ application, the LPCF essentially questions the trial court's approval of a post-judgment, post-appeal settlement of Dr. Hart's $100,000 statutory responsibility. The LPCF contends that, in the least, the trial court was without jurisdiction to approve the settlement within the confines of the Medical Malpractice Act insofar as it would establish the plaintiff's liability. The plaintiff, however, contends that the statute conveys no time limit on approval. If approved, the plaintiff asserts, the defendant health care provider's liability is established for purposes of La.R.S. 40:1299.44(C)(5).

6

La.R.S. 40:1299.44(C) provides, in pertinent part:

C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:

(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.

. . . .

(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.

(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limit of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.

The question at issue before the court in this writ application is whether the post-trial and post-appeal approval of the settlement under the above provision was appropriate. The LPCF asserts both that the trial court was divested of jurisdiction to approve of the settlement after the order of appeal and that application of the

7

presumption of liability described in La.R.S. 40:1299.44(C) constitutes a substantive amendment of the judgment.[2]

La.Code Civ.P. art. 2088 provides:

> The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a substantive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
>
> (1)  Allow the taking of a deposition, as provided in Article 1433;
>
> (2)  Extend the return day of the appeal, as provided in Article 2125;
>
> (3)  Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131;
>
> (4)  Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132;
>
> (5)  Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126;
>
> (6)  Grant an appeal to another party;
>
> (7)  Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
>
> (8)  Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code;
>
> (9)  Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or
>
> (10)  Set and tax costs and expert witness fees.

---

[2]La.Code Civ.P. art. 1951 provides that a judgment may be amended by "the trial court at any time, with or without notice, on its own motion or on motion of any party; (1) To alter the phraseology of the judgment, but not the substance; or (2) To correct errors of calculation."

We observe that much of this issue as argued by the LPCF was resolved by the Louisiana Supreme Court in *Koslowski v. Sanchez*, 576 So.2d 470 (La.1991), which also involved a settlement post-trial. The supreme court explained:

> Liability under the Medical Malpractice Act is based on the initial $100,000 paid by the health care provider or its insurer, pursuant to judgment, settlement, or arbitration. When the insurer has admitted liability up to the statutory maximum, the liability of the health care provider is established, and the only remaining issue is the damages, if any, owed by the patient's compensation fund. The fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial.
>
> The court of appeal erred in holding that the fund could contest liability following a post trial settlement by the insurer of the health care provider for $100,000.

*Id.* at 474. Although a portion of *Koslowski* was later overruled by *Russo v. Vasquez*, 94-2407 (La. 1/17/95), 648 So.2d 879, the portion regarding the question of whether a post-trial settlement established liability was not at issue in the subsequent case. Accordingly, it remains applicable law. *See also Bijou v. Alton Ochsner Med. Found.*, 95-3074, p. 5 (La. 9/5/96), 679 So.2d 893, p. 896 (wherein the supreme court again stated that "the Fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial.") *But see Richardson v. O'Byrne*, 00-2202 (La.App. 4 Cir. 10/16/02), 830 So.2d 1013, *writ denied*, 02-2771 (La. 1/24/03), 836 So.2d 49; *Dawes v. Kinnett*, 99-3157 (La.App. 4 Cir. 1/17/01), 779 So.2d 978. However, what is novel about this case is that the settlement is not merely post-trial, but post-appeal. It is upon this final consideration that the present case turns.

The suspensive appeal related only to the judgment insofar as it involved the intervenor, the LPCF. Accordingly, satisfaction of the judgment with regard to Dr. Hart's $100,000 responsibility under the judgment was certainly within the trial

court's jurisdiction. According to the terms of La.Code Civ.P. art. 2088, however, the trial court lacked jurisdiction to consider "all matters in the case reviewable under the appeal." The issue of liability in this case is such an issue insofar as there had been no settlement entered at the time of the appeal.

The March 2003 judgment approving of the settlement stated in part that: "the LIABILITY of Dr. Clinton Hart and Louisiana Medical Mutual Insurance Company is ADMITTED AND ESTABLISHED pursuant to LSA-R.S. 40:1299.44C(5) by the payment of ONE HUNDRED FIFTEEN THOUSAND AND 00/100 ($115,000.00) DOLLARS and all costs of court to date which represents the policy limits of One Hundred Thousand and 00/100 ($100,000.00) DOLLARS, plus legal interest[.]" This issue was clearly the subject of the LPCF's suspensive appeal and, thus, inappropriate for consideration by the trial court. Accordingly, we vacate that portion of the March 19, 2003 judgment indicating that the approved settlement establishes liability pursuant to La.R.S. 40:1299.44(C)(5).

However, as the trial court retained jurisdiction to consider the settlement insofar as it approved of the satisfaction of judgment against Dr. Hart and LAMMICO, and this portion of the judgment was not appealed, the trial court's approval and dismissal of Dr. Hart and LAMMICO from the suit were not in error. Accordingly, this portion of the March 19, 2003 judgment is affirmed.

Motion to Dismiss

The plaintiff filed a motion to dismiss arguing that, due to the presumption of liability established by the post-appeal settlement, the LPCF's arguments on appeal relating to liability must be dismissed. Due to the preceding conclusion that liability has not been established under La.R.S. 40:1299.44(C)(5) for the purposes of the present appeal, we find no merit in the plaintiff's motion to dismiss the LPCF's

10

appeal. The motion is denied. We therefore turn to consideration of the merits of the LPCF's appeal.

Appeal of the Merits of the October 18, 2002 Judgment

*Directed Verdict*

The plaintiff alleged that Dr. Hart failed to obtain informed consent as to risks associated with the pterygium surgery which could result in loss of vision due to corneal thinning/perforation and also failed to obtain informed consent as to an increased risk of thinning/perforation as the result of a prior eye injury. After the close of evidence the trial court granted a directed verdict in the plaintiff's favor as to this element. Although the LPCF concedes in its brief that "Dr. Hart failed to advise plaintiff of the risk of loss of vision associated with corneal melt following pterygium surgery[,]" it questions whether the risk was known to the plaintiff and whether its relative rarity "rendered the risk immaterial." In particular, the LPCF points to information that Dr. Harper, the initial ophthalmologist recommending the surgery, provided to the plaintiff regarding risks associated with the surgery. This information, the LPCF argues, supplied the plaintiff with sufficient information so as to provide a basis for an informed consent.

Louisiana Code of Civil Procedure Article 1810 provides that a party may move for a directed verdict at the close of evidence. A directed verdict is appropriately granted in the event that "facts and inferences are so overwhelmingly in favor of the moving party that the court finds that reasonable men could not arrive at a contrary verdict." *Guste v. Nicholls Coll. Found.*, 556 So.2d 682, 688-89 (La.1990). On review, an appellate court also considers whether the evidence submitted indicates that reasonable triers of fact would be unable to reach a different verdict. *Pratt v. Himel Marine, Inc.*, 01-1832 (La.App. 1 Cir. 6/21/02), 823 So.2d 394, *writ denied*, 02-2128

11

(La. 11/1/02), 828 So.2d 571, *writ denied*, 02-2025 (La. 11/1/02), 828 So.2d 572.

*Cobb v. Kleinpeter*, 95-271 (La.App. 3 Cir. 10/4/95), 663 So.2d 236, *writ denied*, 95-2683 (La. 1/12/96), 666 So.2d 323. The court of appeal considers the evidence under the substantive law applicable to the nonmoving party's claim. *Frazier v. Zapata Protein USA, Inc.*, 02-0605 (La.App. 3 Cir. 12/11/02), 832 So.2d 1141, *writ denied*, 03-0145 (La. 3/21/03), 840 So.2d 537, *writ denied*, 03-0126 (La. 3/21/03), 840 So.2d 539.

In granting the motion for directed verdict on this issue, the trial court stated:

> To me, I can't conceive of a reasonable mind not coming to the conclusion that Dr. Hart did not adequately inform, by his own testimony, Mr. McNabb of something that I would perceive to be - - and I think any person would perceive to be - - a risk that are even listed in the Medical Disclosure Panel about loss of vision, loss of eyesight, loss of an eye. And, so, I don't see a particular problem with directing that that question be marked "yes," insofar as that is concerned and leave the other issues about whether a person under similar circumstances as Mr. McNabb would have chosen not to have the surgery.
>
> To me, that's a jury issue; and there might be different conclusions as it concerns that. But insofar as what Dr. Hart did, I am satisfied that he didn't comply with the law in as far as informing Mr. McNabb of the potential risk or risks that he should have informed him of.

We turn first to the LPCF's assertion that the risk that was not revealed was not "material" in nature. The Louisiana Supreme Court has explained that physicians are under a duty to disclose those risks that are material. *Brandt v. Engle*, 00-3416 (La. 6/29/01), 791 So.2d 614. Furthermore, the supreme court has found the resolution of the question of "materiality" to be a two-step process, explaining:

> The first step is to define the existence and nature of the risk and the likelihood of its occurrence. "Some" expert testimony is necessary to establish this aspect of materiality because only a physician or other qualified expert is capable of judging what risk exists and the likelihood of occurrence. The second prong of the materiality test is for the trier of fact to decide whether the probability of that type harm is a risk which a reasonable patient would consider in deciding on treatment. The focus is on whether a reasonable person in the patient's position probably

would attach significance to the specific risk. This determination does not require expert testimony.

*Id.* at 619, *quoting, Hondroulis v. Schuhmacher*, 553 So.2d 398, 412 (La.1988)(on rehearing). The LPCF complains that the trial court's determination of materiality did not take into account the second factor, that regarding whether the information was something to which a reasonable person would attach significance.

Having reviewed the evidence regarding the risk of impaired or lost vision as a result of the pterygium surgery, we find no error in the trial court's ruling. The LPCF correctly points out that the experts testified that the occurrence of corneal thinning and perforation is relatively rare following pterygium surgery. However, the plaintiff's experts' testimony was consistent regarding the necessity of the need to inform a patient of risks associated with the surgery, one of those being the risk of loss of vision or impairment of vision. Neither are we persuaded by the assertion that this type of risk is not one to which a patient could attach significance in deciding whether to proceed with the surgery. The very nature of the risk, loss of vision or impairment of vision, renders it significant. We find no error in the trial court's failure to articulate this finding in its reasoning.

Furthermore, we find unpersuasive the LPCF's argument that information provided by Dr. Harper in 1997 sufficiently apprized the plaintiff of the risks of the 1998 surgery performed by Dr. Hart. First, Dr. Harper advised the plaintiff of the risks associated with pterygium removal some eighteen months prior to the surgery at issue. Furthermore, Dr. Harper testified that he found the plaintiff to be apprehensive about the surgery. The plaintiff's testimony that he "was real scared" about someone "fooling with [his] eye" supports Dr. Harper's observation. Furthermore, the surgery with Dr. Harper was, in fact, canceled, arguably due to the

13

disclosure of the risks.  We do not conclude that Dr. Harper's fulfillment of his own obligation to the plaintiff can be found to relieve Dr. Hart of his obligation to obtain informed consent for the surgery that he ultimately performed.  Furthermore, as will be seen below, the plaintiff denied that associated risks were revealed by Dr. Hart.

Accordingly, we find no error in the trial court's determination to grant the directed verdict.

*Causal Relationship between Failure to Disclose and Injury Sustained*

The LPCF argues that, in the event the directed verdict is affirmed, this court should find to be in error the jury's finding that the plaintiff's injury was caused by the failure to disclose.  Specifically, it argues that even if the risk had been disclosed, the plaintiff would have proceeded with the pterygium removal.  This proof of causation, is necessary as, a plaintiff "can only recover damages for those intrusions in which consent would have been reasonably withheld if the patient had been adequately informed." *Lugenbuhl v. Dowling*, 96-1575, p. 12 (La. 10/10/97), 701 So.2d 447, 454.

Here, the jury concluded that the failure to disclose was a cause of the injury sustained.  Our review of the record reveals no manifest error in this factual determination.  Importantly, the jury heard testimony indicating that the plaintiff had previously canceled a surgery with Dr. Harper for removal the pterygium.  Dr. Harper explained that he found the plaintiff to be apprehensive about the surgery.  Furthermore, the plaintiff testified as follows regarding his concern over the operation his ultimate determination to proceed with the procedure at Dr. Hart's office:

Q    What reason did you present at Dr. Hart's office?

A    Well, I had the same problem.  It wasn't getting any worse; but my wife kept bugging me some.  And I always felt like it was a good way to

14

have a second opinion, not to question Dr. Harper but I just wanted a second opinion. And, so, that's why I went to a different doctor.

Q     What was it about Dr. Hart that put you more at ease about having this procedure done?

A     I kind of questioned the young lady in Dr. Hart's office that I had - -

Q     Dr. Hart?

A     Dr. Hart's - - Dr. Harper's office. Excuse me. That I had taught in school. And I found out that I would have to be in the hospital, the way I understood it; and I don't like hospitals either. And Dr. Hart said that he would perform the surgery in his office and it's no big deal. Then you are out of here. And that's the reason why I decided to go ahead and do it.

Q     Did he tell you there was going to be any risks associated with the surgery?

A     No, sir, he kind of told me it was a simple operation and we will just do it in here, I will get my nurse lined up and we will give you a shot and deaden it and you will be on your way.

        . . . .

Q     After hearing Dr. Hart's description of the procedure to you, how did you feel about the procedure at that time? What were your thoughts at that time?

A     I didn't like the shot which was going to go beneath the eye. I was a little concerned about that, which I think anybody would be. But he said the procedure would be very simple. They would just pull it off.

Given this testimony the jury was free to conclude that, with disclosure of the associated risks, the plaintiff would not have proceeded with the surgery. In fact, the jury was aware that he had previously canceled the same surgery. Accordingly, we find no manifest error in the jury's determination of causation.

*Redacted Medical Review Panel Opinion*

At the beginning of the trial, the plaintiff filed a motion in limine seeking to have the following, highlighted portions of the Medical Review Panel redacted before presentation of the opinion to the jury:

> The evidence supports the conclusion that the defendant, Dr. Clinton E. Hart, failed to comply with the appropriate standard of care as to the issue of informed consent detailed herein, *however the conduct complained of was not a factor of resultant damages*. Dr. Baron, Dr. Lusk.
>
> . . . .
>
> *We also feel that whether or not the deviation from the standard of care as to informed consent occurred, it had no bearing on the ultimate outcome to his patient.* Dr. Baron, Dr. Lusk, Dr. Azar.

The trial court granted the motion in limine, finding that the portions highlighted were questions to be resolved by the trier of fact. As this is causation in a lack of informed consent case, the question of causation is not one on which expert testimony is necessary. A writ application was immediately taken on the granting of the motion in limine. Although a panel of this court concluded that another portion of the opinion was improperly omitted, the writ application was denied with regard to the above two passages. *See McNabb v. Louisiana Medical Mutual Insurance Co.*, an unpublished writ bearing docket number CW02-1147.

In our review of this question we are mindful of the broad requirement of La.R.S. 40:1299.47(H), which provides:

> Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by this Part.

16

The broad language of Section H has been found to mandate the admissibility of the opinion. *See Ardoin v. Mills*, 00-1257 (La.App. 3 Cir. 3/8/01), 780 So.2d 1265, *writ denied*, 01-1003 (La. 6/15/01), 793 So.2d 1242. Accordingly, the LPCF argues that the report, in its entirety should have been submitted.

We must consider the above provision, however, in terms of what constitutes the "expert opinion" under the statute. La.R.S. 40:1299.47 also provides, in part:

> G.  The panel shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care. After reviewing all evidence and after any examination of the panel by counsel representing either party, the panel shall . . . render one or more of the following expert opinions, which shall be in writing and signed by the panelists, together with written reasons for their conclusions:
>
> (1)  The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.
>
> (2)  The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.
>
> (3)  That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.
>
> (4)  Where Paragraph (2) above is answered in the affirmative, that the conduct complained of was or was not a factor of the resultant damages. If such conduct was a factor, whether the plaintiff suffered: (a) any disability and the extent and duration of the disability, and (b) any permanent impairment and the percentage of the impairment.

The Medical Review Panel's opinion indicates that it found that the evidence supported a finding that the appropriate standard of care was not met, a finding consistent with Subparagraph 1. According to Subparagraph 4, it is only in the event that Subparagraph 2 is answered in the affirmative that the panel is to reach the question of "whether the conduct complained of was or was not a factor in the resultant damages." We observe at this point that the LPCF asserts that the reference

17

to "Paragraph (2)" in Subparagraph 4 is a typographical error within the statute. The LPCF contends that the reference should be, instead to "Paragraph (1)." While a reading of the statute may support this proposition, we do not speculate as to the legislature's intent.

Considering the statute on its face, we observe that the Medical Review Panel did not answer Subparagraph 2 in the affirmative, thus it exceeded its authority in commenting upon causation in this case. Furthermore, we note that causation in this case, that related to lack of informed consent, is not a conclusion requiring an "expert" opinion. Rather, it is a reasonable person analysis to be employed by the trier of fact. Accordingly, the trial court did not err in redacting those portions of the opinion that exceeded the panel's authority. This assignment lacks merit.

*Deprivation of a Fair Trial*

As stated above, in addition to the finding of lack of informed consent, the jury additionally concluded that the plaintiff received substandard post-operative care. At issue in this assignment is an instruction that the trial court provided to the jury at the time Dr. Hart was questioned as to previous deposition testimony. The instruction, which came at the time of the questioning, is as follows:

> I think it's appropriate, ladies and gentlemen, I want to give an instruction here so that everybody understands what we are doing.
>
> When a witness is questioned about an earlier statement he may have made or earlier testimony he may have given which might be inconsistent with his testimony before you, such questioning is permitted in order to aid you in evaluating the truth or accuracy of his testimony at this trial. Earlier statements made by a witness are not ordinarily offered or received as evidence of the truth or accuracy of such statements but are referred to for purposes of giving you a comparison and aiding you in your determination concerning the credibility or weight to be given the witness' testimony when you hear it at this trial. Whether or not such prior statements of a witness are, in fact, consistent or inconsistent with his trial testimony is entirely for you to determine. I will of course give you additional instructions at the end of the trial concerning a number of

18

matters that you may consider in determining the credibility of the witnesses and the weight to be given to their testimony. But I wanted you to know at this point the purpose of examining a witness concerning prior statements or testimony so that you might better understand the following presentation of evidence.

The LPCF acknowledges that La.Code Civ.P. art. 1792(A) provides that: "At any time during the trial, the court may instruct the jury on the law applicable to any issue in the case." However, the LPCF contends this statement, which was made during Dr. Hart's testimony, should have been made at another, less prejudicial point in the trial. It asserts that the timing of the instruction amounted to a comment upon the evidence in violation of La.Code Civ. P. art. 1791, which provides: "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."

Having reviewed the record as a whole, and the instruction in particular, we do not find that the instruction amounted to a comment upon the evidence. Rather, it was instruction as to the purpose of the deposition and is expressly permitted by the Code of Civil Procedure. Accordingly, this assignment lacks merit.

Answer to the Appeal

In an answer to the appeal, the plaintiff asserts that, due to the establishment of liability from the settlement, the LPCF's arguments regarding the merits of the appeal are frivolous. As, after an appeal has been taken, the trial court was without jurisdiction to find that the settlement established liability under the terms of the Medical Malpractice Act, we find no merit in the answer. Although we do not grant relief on any of the LPCF's assignments of error, we do not find the arguments to be so fully without merit as to allow for damages under La.Code Civ.P. art. 2164. *See Smith v. Clement*, 01-87, p. 10 (La.App. 3 Cir. 10/3/01), 797 So.2d 151, 159, *writ*

*denied*, 01-2878 (La. 1/25/02), 807 So.2d 249, *writ denied*, 01-2982 (La. 1/25/02), 807 So.2d 843 (wherein a panel of this court found damages for frivolous appeal appropriate finding an appeal to be "so devoid of merit that it justified the label frivolous.").

## DECREE

For the foregoing reasons, the application for supervisory writ taken from the Judgment of March 19, 2003, is denied in part, granted in part and made peremptory. Accordingly, that portion of the March 19, 2003 judgment establishing liability pursuant to La.R.S. 40:1299.44(C)(5) is vacated. The motion to dismiss the appellant's appeal is denied. The October 18, 2002 judgment on the merits of the case, from which the appeal is taken, is affirmed. Furthermore, the plaintiff's answer to the appeal, seeking damages associated with frivolous appeal is denied. All costs of this matter are assigned to the appellant, Louisiana Patients' Compensation Fund.

**WRIT GRANTED IN PART AND MADE PEREMPTORY; DENIED IN PART.**
**JUDGMENT ON APPEAL AFFIRMED;**
**MOTION TO DISMISS DENIED.**
**DAMAGES FOR FRIVOLOUS APPEAL DENIED.**